UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: MEXICAN GOVERNMENT BONDS ANTITRUST LITIGATION

18-CV-2830 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In this consolidated putative class action, Plaintiffs allege that Defendants — several banks and related affiliates — conspired to manipulate the market for certain debt securities issued by the Mexican government. A subset of Defendants[1] ("Moving Defendants") move to dismiss the complaint for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), respectively. For the reasons that follow, the motion to dismiss for lack of personal jurisdiction is granted.[2]

[1] Moving Defendants are Banco Nacional de México, S.A., Institución de Banca Múltiple, Grupo Financiero Banamex; Banco Santander (México), S.A., Institución de Banca Múltiple, Grupo Financiero Santander México; Bank of America México, S.A., Institución de Banca Multiple, Grupo Financiero Bank of America; BBVA Bancomer S.A., Institución de Banca Múltiple, Grupo Financiero BBVA Bancomer; Deutsche Bank México, S.A., Institutión de Banca Múltiple; HSBC México, S.A., Institución de Banca Múltiple, Grupo Financiero HSBC.

[2] The Court also grants the pending motions to seal various materials submitted in connection with this motion. (*See* Dkt. Nos. 177, 202.) The material sought to be sealed pertains to ongoing criminal proceedings in Mexico, and the disclosure thereof may impede the ongoing action. (*See* Dkt. No. 165.) Accordingly, for the reasons described at greater length in the Court's opinion at Docket Number 165 granting a related motion, the Court concludes that the standard for sealing materials set out in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), are met here.

## I. Background

The following facts are taken from the Second Consolidated Amended Class Action Complaint (Dkt. No. 163 ("SAC")) unless otherwise noted.

As this Court has previously explained in greater detail, Mexican government bonds ("MGBs") are debt securities issued and backed by the Mexican government. (SAC ¶ 291.) The Bank of Mexico ("Banxico") issues MGBs via auctions that typically occur once a week. (SAC ¶¶ 293–94.) Participation in the auctions is limited to a group of pre-approved financial institutions, consisting mostly of Banxico-designated "Market Makers." (SAC ¶¶ 294–96, 316–20.) (All of the Moving Defendants participate in the "Market Maker Program" for MGBs, which helps guarantee liquidity in the MGB market. (SAC ¶¶ 294–96, 316–20.) After the MGBs are issued via the auction, they may be resold in the MGB over-the-counter market. (SAC ¶ 322.)

Moving Defendants are all Mexico-based banks, so their United States MGB over-the-counter trading involved an MGB trading desk in Mexico, a United States (non-party) affiliate's sales desk located in New York, and a broker-dealer affiliate. (SAC ¶ 66.) Employees on the New York sales desks were primarily responsible for marketing MGBs to investors in the United States. (SAC ¶¶ 76–79.) For example, the sales desks managed customer relationships, made sales calls, distributed trade ideas to U.S. investors, and arranged MGB trades with the Defendant's U.S. customers. (SAC ¶¶ 95, 110–11, 114–15 131–32, 139, 156–58, 160–62, 176–78, 180–82, 197–99, 203–04, 216–17, 220–22, 229.) Each time a customer in the United States contacted a sales desk in New York to trade MGBs, the sales desk forwarded the customer request to Defendants in Mexico to determine a price. (SAC ¶¶ 81–87.) The Defendants' Mexico-based MGB traders were responsible for pricing the trade and sending the price back to the New York sales desk, either by telephone or electronically, so that the sales desk could offer

the price to the customer in the United States. *Id.* Each time a customer accepted a price quoted by a Defendant for an MGB sale, the Defendant's MGB traders distributed MGBs by executing a "back-to-back" transaction in which the Defendant transferred MGBs to a broker-dealer, and simultaneously executed an equal and offsetting transaction with the customer to send the MGBs to the customer's account in the United States. (*See, e.g.*, SAC ¶¶ 84–87, 123–24, 149-50, 167–68, 188–89, 210–11, 223–30.)

Plaintiffs are U.S. pension funds alleging that they purchased or sold MGBs though these distribution channels at supra-competitive prices as a result of Defendants' conspiracy. (*See* SAC at 7–10.) They filed the present action March 30, 2018, and filed an amended complaint on July 18, 2018, alleging that Defendants had conspired to fix the weekly MGB auction, to fix the bid-ask spread on the secondary market, and to otherwise inflate the price of resold MGBs. (*See* Dkt. Nos. 1, 75.) On September 30, 2019, this Court granted a motion to dismiss the then-operative complaint, which named as defendants both foreign and domestic entities, for failure to state a claim. *See In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 392 (S.D.N.Y. 2019) ("MGB I"). It also dismissed as moot the foreign defendants' motion to dismiss for lack of personal jurisdiction. (*Id.*) Thereafter, Plaintiffs filed the Second Amended Consolidated Class Action Complaint (Dkt. No. 163, "SAC"), which names as defendants only a subset of the initial defendants, and only foreign entities. Those foreign entities, the Moving Defendants, now move to dismiss the SAC for lack of personal jurisdiction and improper venue, largely renewing the arguments from their first motion to dismiss.

## II. Legal Standard

To survive a Rule 12(b)(2) motion to dismiss, a plaintiff "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted). In the

absence of a "full-blown evidentiary hearing on the motion," the plaintiff is required to make only "a prima facie showing" that jurisdiction exists. *Schultz v. Safra Nat'l Bank*, 377 F. App'x. 101, 102 (2d Cir. 2010) (citation omitted). Such a showing must satisfy three elements: "(1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with constitutional due process principles." *Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Yian Chen*, 12 Civ. 6390, 2013 WL 1775440, at *3 (S.D.N.Y. Apr. 25, 2013) (citation omitted). These elements must be met with "factual specificity"; conclusory allegations will not suffice. *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (citation omitted).

## III. Discussion

Moving Defendants argue principally that the Court's exercise of personal jurisdiction over them would not comport with due process.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation omitted). Accordingly, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci*, 673 F.3d at 60. As the Second Circuit has explained:

> Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not offend traditional notions of fair play and substantial justice. To determine whether this is so, we apply a two-step analysis in any given personal jurisdiction case. First, we ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction . . . . If the defendant has sufficient minimum contacts, we proceed to the second stage of the due process inquiry, and consider whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case.

*Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008) (quotation marks and internal citations omitted).

Courts recognize two forms of personal jurisdiction, specific and general, but only specific is claimed here. "[S]pecific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996) (quotation marks and citations omitted). "[I]t is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Plaintiffs advance three independent theories of specific jurisdiction: first, that Moving Defendants purposefully availed themselves of the United States by marketing and transacting MGBs here via their non-party affiliates' New York desks; second, that Moving Defendants are subject to personal jurisdiction based on the effects on the Plaintiffs in the United States; and third, that Moving Defendants are subject to personal jurisdiction on a conspiracy jurisdiction theory. (*See* Dkt. No. 201.)

The issues raised in this case — namely, the conditions under which foreign banks may be haled into court in the United States to answer for alleged anticompetitive conduct abroad — have arisen frequently in recent years. The Court is therefore guided by the decisions of the Second Circuit and other judges in this District who have already tread this ground. The leading case in this Circuit (and, as explained below, the dispositive authority in this case) is *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018). In *Schwab*, purchasers of certain financial instruments that incorporated the London Interbank Offered Rate ("LIBOR")

sued several banks for having allegedly fixed that rate. *Id.* at 78. The fixing of the rate occurred in London, but the sales of the instruments occurred in the forum state. *Id.* at 83. The Second Circuit held that due process generally "require[s] that the plaintiff show some sort of causal relationship between a defendant's U.S. contacts and the episode in suit, and the plaintiff's claim must in some way 'arise from the defendants' purposeful contacts with the forum." *Id.* at 84. Thus, the Court held, there existed no personal jurisdiction over the defendants with respect to the claim that Defendants committed fraud through their daily LIBOR submissions, even though the same Defendants later sold the instruments, which incorporated the fraudulent rate, to plaintiffs in California, the forum state. *Id.* at 83–84. By way of distinction, the Court held that state-law fraud claims grounded in misrepresentations made during the sales process in California could proceed, because the unlawful conduct arose from those contacts. *Id.*

The upshot of *Schwab* is that purposeful availment in antitrust cases generally requires in-forum contacts that bear a causal relationship to defendants' *wrongdoing*, not merely to plaintiff's *harm*. Applying that principle here, the Court cannot conclude that Defendants' contacts confer personal jurisdiction over them. Even if Defendants established contacts with the forum by marketing and selling MGBs in the United States via the non-party affiliates' trade desks and broker dealers, as Plaintiffs claim, a conspiracy does not "arise from" an *ex post* attempt to profit from the conspiracy. *See id.* at 12. Defendants' alleged antitrust violations instead arise from three discrete but related schemes: the conspiracy to fix the Banxico MGB auctions; the conspiracy to sell MGBs in the over-the-counter market at inflated prices; and the alleged conspiracy to fix the bid-ask spread. Each of those agreements occurred in Mexico alone. (*See* SAC at 148–150.)

Plaintiffs insist that their claims "arise out of" sales in New York because in the absence of the sales, they would not have been injured and therefore they would not have had antitrust standing to bring the claims. (*See* Dkt. No. 201 at 8–9.) But the antitrust standing requirement goes to the question whether "the plaintiff is a proper party to bring a private antitrust action," *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016), not whether there has been a violation of the law in the first instance. If conduct satisfying such a requirement can supply the relevant causal nexus, then virtually any time a plaintiff has statutory standing — or even *constitutional* standing — arising out of an injury in the forum state, personal jurisdiction could be exercised over the defendant. Plaintiff's theory is therefore at odds with *Schwab*'s emphasis on the contacts that cause the defendant's allegedly unlawful conduct, rather than the contacts that provide the relevant jurisdictional hooks.

Nor can Plaintiffs invoke "the so-called 'effects test,'" under which personal jurisdiction is "invoked where . . . the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff." *In re Platinum & Palladium Antitrust Litig.*, No. 14 Civ. 9391, 2017 WL 1169626, at *42 (S.D.N.Y. 2017) (citation omitted). For such claims, "the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum." *See Licci*, 732 F.3d at 173 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1983) (emphasis added).) Harmful effects alone, however, will not establish jurisdiction: "'[T]he fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant.'" *Waldman*, 835 F.3d at 339 (quoting *In re Terrorist Attacks*, 714 F.3d at 674).

Again, *Schwab* controls. In *Schwab*, the Court held that the defendants who had fixed LIBOR in London and then later sold LIBOR-incorporating instruments to plaintiffs in California had not "expressly aimed" their conduct at California; instead, those facts indicated "mere foreseeability." *Schwab*, 883 F.3d at 87. This was so *even though* defendants there actively and intentionally sought to profit from their manipulation via conduct in California. *See id.* The Court sees no distinction between the profit-driven, injury-imposing sales at issue in *Schwab* and the profit-driven, injury-imposing sales here.[3]

Plaintiffs also claim that conspiracy jurisdiction provides an independent and sufficient basis upon which personal jurisdiction may rest. A party seeking to invoke conspiracy jurisdiction must allege (1) the existence of a conspiracy, (2) that each defendant participated in the conspiracy, and (3) that a co-conspirator committed "overt acts in furtherance of the conspiracy" within the forum. *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 236 (S.D.N.Y. 2019). But here, the alleged co-conspirators — the hook to the third element — are other similarly situated Moving Defendants. Having determined that none of the Moving Defendants is subject to personal jurisdiction in its own right, or has purposely availed itself of the forum for the purposes of this lawsuit, the Court cannot find that they are nonetheless subject to personal jurisdiction because of their alleged affiliation with one another. The doctrine of conspiracy jurisdiction does not permit Plaintiffs to turn nothing into something.

[3] The pre-*Schwab* decision cited by Defendants does not change this conclusion. In *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003), the Second Circuit held that plaintiffs were entitled to jurisdictional discovery because they had alleged that the defendant had participated in a meeting in which a scheme to specifically fix prices in the United States were discussed. *See id.* at 207–08. No analogous allegation exists here: the alleged agreements involved *all* MGBs *globally*, and thus the agreement itself, at its formation, was not "expressly aimed" at the United States.

The foregoing analysis applies with equal force to Plaintiffs' unjust enrichment claims. Plaintiffs argue that because *Schwab* allowed certain state-law claims premised on in-forum contacts to proceed, the unjust enrichment claims here should proceed because the transactions in the forum generated the unjust enrichment. (*See* Dkt. No. 10–11.) But in distinction to the state claims allowed in *Schwab*, which were premised on distinct misrepresentations furnished in the process of selling the instruments in California, *see Schwab*, 883 F.3d at 83–84, the underlying illegal conduct upon which the unjust enrichment claim here is premised is the same as the antitrust claims, and the same jurisdictional issues therefore plague the unjust enrichment claims.

One may fairly question the wisdom of *Schwab*'s parsimonious approach to personal jurisdiction, particularly in light of arguably more generous attitude the Supreme Court has taken in the cases *Schwab* purports to interpret. *See generally Calder*, 465 U.S. 783. And clarity on this score may be in the offing: the Supreme Court is currently considering the extent to which due process requires a causal nexus between defendants' contacts in the forum and the claims. *See* Petition for a Writ of Certiorari, *Ford Motor Company v. Bandemer*, No. 19-368, 2019 WL 4598227 (U.S. Sept. 18, 2019). But unless and until the Supreme Court weighs in, this Court is bound to apply the Second Circuit's precedents faithfully and to give their reasoning full effect. And the understanding of *Schwab* set out herein is consistent with the weight of authority in this district. *See, e.g., In re ICE LIBOR Antitrust Litig.*, No. 19 Civ. 439, 2020 WL 1467354, at *3 n.9 (S.D.N.Y. Mar. 26, 2020) (analyzing profit-driven antitrust conspiracy claims and concluding that plaintiffs must allege a "'causal relationship' between . . . defendants' conspiracy to set rates and their respective trading activities in the United States"); *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 204-06 (S.D.N.Y. 2018) ("*BBSW I*") (same); *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 294 (S.D.N.Y. 2019) ("The overt acts in furtherance of the conspiracy are the actions undertaken to accomplish the price fixing (i.e., the manipulation of the FX market), not

the sale of FX instruments at prices affected by the price fixing.”). That opinion compels the determination that the Court lacks personal jurisdiction over Moving Defendants.

Finally, Plaintiffs request leave to conduct “limited discovery to confirm that Defendants fixed the prices of Plaintiffs’ in-forum MGB trades.” (Dkt. No. 201 at 29–30.) Courts have “broad discretion in determining whether or not to permit discovery aimed at establishing personal jurisdiction.” *Vista Food Exchange, Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 313 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). The party seeking discovery bears the burden of “showing necessity.” *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011). Where a plaintiff fails to establish a prima facie case for jurisdiction, “a district court does not err in denying jurisdictional discovery.” *Vista*, 124 F. Supp. 3d at 314; *see also Best Van Lines Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (“We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction.”). A court may also deny jurisdictional discovery where “additional discovery would not uncover unknown facts or cure the deficiencies in the Plaintiff’s pleading.” *Vista*, 124 F. Supp. 3d at 314 (internal quotation marks and citation omitted).

As discussed, Plaintiffs have failed to make a prima facie case for personal jurisdiction. The Court sees no way in which additional discovery would cure the jurisdictional defects at issue. Accordingly, Plaintiffs’ request for jurisdictional discovery is denied.

## IV. Conclusion

For the foregoing reasons, Moving Defendants’ motion to dismiss is GRANTED. Plaintiffs’ motions to file certain materials under seal are GRANTED.

The Clerk of Court is directed to close the motion at Docket Numbers 165, 176, 177, and 202.

SO ORDERED.

Dated: November 30, 2020
New York, New York

J. PAUL OETKEN
United States District Judge