UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE: MEXICAN GOVERNMENT
BONDS ANTITRUST LITIGATION

18-CV-2830 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

In this consolidated putative class action, Plaintiffs allege that Defendants conspired to manipulate the market for certain debt securities issued by the Mexican government. On November 30, 2020, the Court granted a motion to dismiss the complaint for lack of personal jurisdiction from a subset of the Defendants ("Moving Defendants").[1] Plaintiffs have filed a motion for reconsideration of that order. For the reasons that follow, the motion for reconsideration is denied.

I.   Background

   A.   Factual Background

As previously explained in greater detail, Plaintiffs are U.S. pension funds alleging that they purchased or sold Mexican government bonds through certain distribution channels. (*See* Dkt. No. 163 ("SAC") at 7-10.) The Second Consolidated Amended Class Action Complaint generally alleges that several banks and related affiliates conspired to sell Mexican government bonds ("MGB") through those channels at supra-competitive prices. (*See id.*)

---

[1] The Moving Defendants are Banco Nacional de México, S.A., Institución de Banca Múltiple, Grupo Financiero Banamex; Banco Santander (México), S.A., Institución de Banca Múltiple, Grupo Financiero Santander México; Bank of America México, S.A., Institución de Banca Multiple, Grupo Financiero Bank of America; BBVA Bancomer S.A., Institución de Banca Múltiple, Grupo Financiero BBVA Bancomer; Deutsche Bank México, S.A., Institutión de Banca Múltiple; and HSBC México, S.A., Institución de Banca Múltiple, Grupo Financiero HSBC.

The alleged conspiracy works like this: The Bank of Mexico issues Mexican government bonds in an auction each week. (*See* SAC ¶¶ 293-94.) The auction is limited to a group of pre-approved financial institutions, designated "Market Makers." (*See* SAC ¶¶ 294-96, 316-20.) Those institutions include the Moving Defendants. (*See* SAC ¶¶ 294-96, 316-20.) Once issued bonds, the Moving Defendants may sell them in the over-the-counter market. (*See* SAC ¶ 322.)

As relevant here, the Moving Defendants are all Mexico-based banks. (*See* SAC ¶ 66.) When they sell a bond in the over-the counter market, they use an MGB trading desk in Mexico, a nonparty affiliate's sales desk in New York, and a nominal broker-dealer affiliate. (*See id.*) In a typical sale, a customer from the United States would contact a sales desk in New York to trade MGBs. (*See* SAC ¶¶ 81-87.) The sales desk would forward the customer request to the MGB trading desk in Mexico. (*See id.*) The MGB trading desk would determine a price, which it would send to the sales desk in New York by telephone or electronically. (*See id.*) The sales desk in New York would offer the price to the customer. (*See id.*)

If a customer accepted, the MGB trading desk in Mexico would distribute the bonds. (*See, e.g.*, SAC ¶¶ 84-87, 123-24, 149-50, 167-68, 188-89, 210-11, 223-30.) They would execute a "back-to-back" transaction. (*See id.*) That means that the trading desk would transfer the bonds to a broker-dealer, who would simultaneously execute a transaction with the customer. (*See id.*) The customer would receive the bonds in his account in the United States. (*See id.*)

**B.     Procedural History**

The Court granted a motion to dismiss the SAC for lack of personal jurisdiction on November 30, 2020. (*See* Dkt. No. 222 ("Opinion and Order") at 11.) As relevant here, the Court concluded that the exercise of jurisdiction would not comport with constitutional due process. (*See* Opinion and Order at 4.) In doing so, the Court rejected Plaintiffs' argument that there was specific jurisdiction over the Moving Defendants. *See id.* at 5. The Court concluded

that the "dispositive authority" on the issue was *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018). *Id.* In *Schwab*, as here, the fixing of the rate occurred outside of the United States, but the sales of the instruments occurred in the United States. *See id.* at 5. The Court read *Schwab* to conclude that there was no specific jurisdiction over claims that the defendants there had submitted fraudulent rates, but there was specific jurisdiction over claims that the defendants had made misrepresentations during sales. *See id.* at 5-6. Applying *Schwab*, the Court concluded that there was no specific jurisdiction over Plaintiffs' antitrust claims because the alleged wrongful conduct — conspiring to fix MGB auctions, conspiring to inflate MGB prices, and conspiring to fix the bid-ask spread — occurred in Mexico. *Id.* at 6. And it concluded that there was no specific jurisdiction over Plaintiffs' unjust enrichment claim because it was based on the same allegedly wrongful conduct. *See id.* at 9. Accordingly, the Court granted the Moving Defendants' motion to dismiss. *See id.* at 10.

Plaintiffs have moved for reconsideration under Federal Rule of Civil Procedure 54(b), arguing that *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), reflects an intervening change in law that compels a different result. (*See* Dkt. No. 228.)

**II.     Legal Standard**

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The standard for a motion for reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Rather, the moving party must "point to controlling decisions or data that

3

the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. Typically, the moving party must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

### III. Discussion

#### A. Timeliness

Plaintiffs' motion for reconsideration is denied as untimely. Local Rule 6.3 directs a party to file a notice of motion for reconsideration "within fourteen (14) days after the entry of the Court's determination of the original motion." Plaintiffs did not do so, nor did they ask for an extension. Plaintiffs protest that they rely on an intervening change in law, and *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), had not been decided at the time. But the Court's order highlighted *Ford* in the order granting the Moving Defendants' motion to dismiss for lack of jurisdiction, which placed Plaintiffs on notice that *Ford* might bear on the relevant law, and Plaintiffs could have asked for an extension at that time. In any event, Plaintiffs did not file a motion for reconsideration within fourteen days of that decision either; they waited nearly two months after *Ford* to raise their objection. The motion is untimely.

#### B. Merits

Plaintiffs' motion for reconsideration is also denied as unpersuasive. Plaintiffs move for reconsideration on the ground that the Court is no longer bound by *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018). But the facts there are indistinguishable. In *Schwab*, the alleged misconduct — setting fraudulent rates — took place outside of the United States, the sales of the instruments took place in the United States, and those sales did not give rise to specific jurisdiction over a fraud claim. *See id.* at 83-84. Here, the alleged misconduct —

4

conspiring to fix auctions, prices, and a bid-ask spread — took place outside of the United States, and the sales of the instruments took place in the United States. Those sales must also not give rise to specific jurisdiction over an antitrust claim. There, as here, the sales were not part of the misconduct in the suit. Nor is there any other legally recognized connection that might justify specific jurisdiction. The Court is "bound" by *Schwab* "unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision." *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003).

Plaintiffs argue that *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), displaced *Schwab*. But *Ford* and *Schwab* are not irreconcilable. *Ford* is not about the sale of financial instruments; not about rate-setting; and not about fraud or conspiracy. *See Ford*, 141 S. Ct. at 1022-1025. And *Ford*, by its terms, does not compel the conclusion that there *is* specific jurisdiction over foreign misconduct based on sales in the United States like those in *Schwab*. At most, *Ford* undermines the rationale leading to *Schwab*'s bottom line. *Schwab* held that specific jurisdiction over the fraud claim did not exist in part because the "transactions did not cause Defendants' . . . submissions . . . , nor did the transactions in some other way give rise to claims seeking to hold Defendants liable for those submissions." *Schwab*, 883 F.3d at 84. *Ford* holds that "some relationships will support jurisdiction without a causal showing." *Ford*, 141 S. Ct. at 1026. If the Second Circuit thinks that *Schwab* reflects one of those relationships, it is for the Second Circuit to say so. For a district court to ignore binding Second Circuit precedent, it is not enough for a Supreme Court decision to be in "tension" with that precedent. *Monsanto*, 348 F.3d at 351. It must be "all but certain" that the Second Circuit precedent will be overruled. *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004) (Lynch, J.); *see United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015)

5

(articulating test as whether Supreme Court decision "so undermines [the precedent] that it will almost inevitably be overruled by the Second Circuit").  It is not all but certain that the Second Circuit will overrule *Schwab*.  Accordingly, Plaintiff's motion for reconsideration is denied.

### IV.     Conclusion

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 228.

SO ORDERED.

Dated: March 30, 2022
       New York, New York

_____
J. PAUL OETKEN
United States District Judge