**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MEXICAN GOVERNMENT BONDS ANTITRUST LITIGATION | Master Docket No. 18-cv-02830 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR ENTRY OF AN ORDER APPROVING DISTRIBUTION OF THE
<u>NET SETTLEMENT FUNDS TO AUTHORIZED CLAIMANTS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

I.   CLAIMS ADMINISTRATION PROCESS ............................................................................ 2

    A.  Identification of Eligible Claims and Transactions ................................................. 2

    B.  Deficiency and Final Disposition Letters ................................................................ 3

    C.  Claims Auditing ...................................................................................................... 4

    D.  Quality Assurance Review ...................................................................................... 5

    E.  A.B. Data's Claim Determinations ......................................................................... 6

II.  DISTRIBUTION PROCEDURE FOR THE NET SETTLEMENT FUNDS .......................... 6

    A.  Claimants Receiving the $50 Minimum Payment ................................................... 7

    B.  Claimants Receiving Their Full Distribution Amount during the Primary Distribution ..... 8

    C.  Claimants Receiving 90% of Their Distribution Amount in the Primary Distribution ....... 8

    D.  Payment Terms and Secondary Distribution ......................................................... 9

III. RECORD RETENTION AND DESTRUCTION ................................................................... 9

IV.  SETTLEMENT ADMINISTRATOR EXPENSES TO DATE AND COST TO COMPLETE DISTRIBUTION ................................................................................................................... 9

CONCLUSION ............................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alaska Elec. Pension Fund v. Bank of Am., Corp.*,
    No. 14-cv-7126 (JMF), 2020 WL 916853 (S.D.N.Y. Feb. 26, 2020) .................................... 7, 9

Plaintiffs,[1] by and through their counsel, Lowey Dannenberg, P.C. ("Lead Counsel"), respectfully submit this memorandum of law and the accompanying Declaration of Jack Ewashko (the "Ewashko Decl.") in support of their motion seeking approval of the proposed distribution of the Net Settlement Funds.[2]

## INTRODUCTION

The Court-appointed Settlement Administrator, A.B. Data, Ltd. ("A.B. Data") and Lead Counsel have worked diligently to process Proofs of Claim and Release ("Claims"), answer questions, and implement the Distribution Plan approved by the Court in this Action. Following dissemination of notice to the Class, potential Class Members submitted Claims to determine their eligibility to receive a portion of the Net Settlement Funds. Ewashko Decl. ¶ 6. After a thorough review of all Claims, A.B. Data has determined that 4,352 Claims are eligible to receive a payment. *Id.* ¶ 17. Upon the Court's entry of the accompanying Distribution Order, each Authorized Claimant will receive its *pro rata* share of the Net Settlement Funds (the "Distribution Amount").

A.B. Data proposes distributing the Net Settlement Funds in two phases. In the first phase (the "Primary Distribution"), Authorized Claimants whose Distribution Amount calculates to between $50 and $5,000 will receive their full Distribution Amount. *Id.* ¶ 46(b). The remaining Authorized Claimants whose Distribution Amount is greater than or equal to $5,000 will receive ninety percent (90%) of their Distribution Amount during the Primary Distribution. *Id.* The

---

[1] "Plaintiffs" are Oklahoma Firefighters Pension & Retirement System, Electrical Workers Pension Fund Local 103, I.B.E.W., Manhattan and Bronx Surface Transit Operating Authority Pension Plan, Metropolitan Transportation Authority Defined Benefit Pension Plan Master Trust, Boston Retirement System, Southeastern Pennsylvania Transportation Authority Pension Plan, United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund, and Government Employees' Retirement System of the Virgin Islands.

[2] Unless otherwise noted, capitalized terms used herein have the same meaning as defined in the Stipulation and Agreement of Settlement with Barclays dated March 27, 2020 (ECF No. 211-1) and the Stipulation and Agreement of Settlement with JPMorgan dated March 27, 2020 (ECF No. 211-2). Unless otherwise noted, internal citations and quotation marks are omitted and ECF citations are to the docket. As of February 28, 2026, the Net Settlement Fund totals $15,118,093.66. Interest will continue to accrue on the Net Settlement Funds until the time of distribution.

remaining ten percent (10%) will be held in reserve for contingencies and later distribution. *Id.*; *see, e.g.*, Order Approving Distribution of the Net Settlement Fund, *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR) (S.D.N.Y), ECF No. 451 (Apr. 23, 2021) ("*GSE* Distribution Order"); Order Approving Distribution of the Net Settlement Fund, *Laydon v. The Bank of Tokyo-Mitsubishi UFJ, Ltd., et al.*, No. 12-cv-3419 (GBD) (S.D.N.Y.), ECF No. 1098 (Mar. 14, 2023) ("*Laydon* Distribution Order"); Order Approving Distribution of the Net Settlement Funds, *Fund Liquidation Holdings LLC v. Citibank, N.A., et al.*, No. 16-cv-5263 (AKH) (S.D.N.Y.), ECF No. 592 (Aug. 22, 2023) ("*SIBOR* Distribution Order").  Any funds remaining in reserve and any unclaimed funds from the Primary Distribution will be reallocated *pro rata* to those Authorized Claimants who had a portion of their Distribution Amount held in reserve.

Importantly, there are no objections to A.B. Data's determinations.

## I.    CLAIMS ADMINISTRATION PROCESS

The sections below summarize A.B. Data's efforts to: (a) identify eligible Claims; (b) advise Claimants of A.B. Data's deficiency findings and final dispositions concerning their Claims; (c) audit Claims; and (d) complete a quality assurance review. A summary of A.B. Data's determinations is also provided.

### A.  Identification of Eligible Claims and Transactions

Processing Claims for this Settlement was particularly time-intensive due to the fact that the transaction data for many claims were submitted with PDF statements. Ewashko Decl. ¶ 12. As a result, for numerous Claim Forms, the underlying transaction data needed to calculate the Transaction Claim Amount had to be converted into machine-readable text using optical character recognition ("OCR"), extracted from PDF documents into an Excel spreadsheet format and manually restructured in order to calculate a transactional claim amount. *Id*. After all supporting documents and data were appended to the respective Claim, A.B. Data reviewed each Claim to

determine whether it was eligible on both the Claim-level and on the transaction-level. *Id.* ¶¶ 20-25. To be eligible, a Claim had to include:

- eligible Mexican Government Bond Transaction(s) entered during the Class Period.

- valid documentation to support the Mexican Government Bond transactions included in the Claim; and

- information demonstrating that the claimant either was domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted Mexican Government Bonds in the United States or its territories.

*Id.* ¶¶ 21-23. In addition, each Claim needed to remain in good standing, meaning that the Claim was not withdrawn, replaced, or duplicative of another Claim. *Id.* ¶ 24. A.B. Data also checked for certain transaction-level deficiencies including transactions that were internal transfers within the Claimant's organization. *Id.* ¶ 25.

### B. Deficiency and Final Disposition Letters

After reviewing all filed Claims, A.B. Data sent a letter (the "Deficiency Letter") to each Claimant describing any deficiency with the Claim and providing the Claimant an opportunity to cure the deficiency. Ewashko Decl. ¶ 26. If the Claim was rejected in part or in whole, the reason(s) for the rejection was referenced. *Id.* ¶¶ 26-27. A.B. Data further advised Claimants of their right to contest the rejection of their Claims or certain transactions. *Id*. ¶ 26.

After evaluating the Claimant responses and updating Claims data based on any documents received in connection with the deficiency process, A.B. Data contacted each Claimant to provide a final disposition of the Claim (the "Final Determination Letter"). *Id.* ¶ 31. The Final Determination Letter provided the Claimant's Transaction Claim Amount calculation pursuant to the Distribution Plan for each Authorized Claimant whose Claim was accepted. ¶ 32.

A.B. Data's correspondence advised each Claimant of its right to object to A.B. Data's determination. *Id.* ¶¶ 26, 32.  A Claimant seeking to object to A.B. Data's determination was required to submit a written statement requesting additional review of its Claim and setting forth the basis for the objection. *Id.* ¶¶ 26, 32. As of this filing, A.B. Data has not received any objections or requests for Court review of its administrative determinations. *Id.* ¶¶ 34-35.

### C. Claims Auditing

A.B. Data also performed targeted audits of transactions from certain Claims. Audited Claimants were asked to provide broker/custodian statements, confirmation slips or other transaction-specific documentation supporting the specific sample transaction(s) selected by A.B. Data for audit. Ewashko Decl. ¶¶ 36-38.  These targeted audits helped to ensure that transaction data supplied by Claimants did not contain false or inaccurate information. *Id.* ¶ 36.  The Claims selected to submit their underlying confirmations and other documentation for audit included:

- **Large Claims:**  A.B. Data requested supporting documentation from the Claimants comprising the top 87% of the total Transaction Claim Amounts under the Distribution Plan. *Id.* ¶ 37(a).

- **Bulk Filer Claims:**  Certain Claims submitted by (a) financial institutions on behalf of multiple customers and (b) agents such as claims aggregators and law firms on behalf of their customers/clients (collectively, "Bulk Filer Claims") were also selected to be included in the audit. *Id.* ¶ 37(b).

A.B. Data sent an e-mail (or letter) to each auditee (the "Audit Letter"), asking that these Claimants provide the requested documentation or data. *Id.* ¶ 38.  Each Claimant was advised that failing to timely respond and provide the requested information within a specified time period

would result in the Claim's rejection. *Id.*  In total, A.B. Data audited 42 Claims (the "Audited Claims"). *Id.* ¶ 39. Of these, 39 audited Claimants responded to the Audit Letter. *Id.* ¶ 40.

Upon receiving data from the Audited Claims, A.B. Data's Electronic Claim Filing Team evaluated all transaction-level data provided to confirm the eligibility of each audited transaction. As a result of the audit, 28 of the Audited Claims passed with no rejections and 11 passed with adjustments. *Id.* ¶ 41. These Claims are included in Exhibit A (Timely Eligible Claims) to the Ewashko Decl. *Id.*

### D.  Quality Assurance Review

A.B. Data's Quality Assurance Department operated as an independent auditor to ensure that the settlement administration followed the Distribution Plan and commonly accepted claims administration practices. Ewashko Decl. ¶ 42.  The department performed a quality assurance review of the Claims during which, among other things, A.B. Data:

- verified that persons and entities excluded from the Class did not file Claims and, if such persons or entities did file Claims, that their Claims were rejected or properly excluded from the *pro rata* calculation of the Net Settlement Funds;

- performed a review of deficient or invalid Claims;

- confirmed all Claimants that were to receive a deficiency and/or rejection notice were sent such notification;

- audited Claims whose Transaction Claim Amount calculation equaled zero;

- performed other auditing based on Claims completion requirements and the approved calculation specifications based on the Distribution Plan; and

- re-tested the accuracy of the program that calculated the allocation from Net Settlement Funds.

5

*Id.* ¶ 42.  As part of its fraud prevention procedures, A.B. Data also compared the Claimant list against its list of known questionable claim filers, whose claims (if present) would be subject to additional review. *Id.* ¶ 43.

### E.  A.B. Data's Claim Determinations

A total of 5,588 Claims were submitted on or before the Claim deadline of November 29, 2021, of which 4,120 were determined by A.B. Data to have eligible Mexican Government Bond transactions ("Timely Eligible Claims"). Ewashko Decl. ¶ 15.

A total of 407 Claims were submitted after the November 29, 2021 Claim submission deadline ("Late Claims"). *Id.* ¶¶ 16, 44.  Of those, 232 were determined by A.B. Data to have eligible Mexican Government Bond transactions. *Id.* ¶ 16.  These otherwise eligible Late Claims are recommended for payment because the late submission did not delay the distribution of the Net Settlement Funds. *Id.*  A total of 175 Late Claims were ineligible for reasons other than timeliness. *Id.* ¶ 16.

In total, there are 4,352 Claims with eligible Mexican Government Bond transactions that may receive their Distribution Amount pursuant to the Distribution Plan.  *Id.* ¶ 17.

A.B. Data recommends that the Court reject the remaining 1,643 Claims, which include Claims that: were withdrawn (50), replaced (790), submitted in duplicate (163), had no U.S. connection (73), or did not have eligible transactions or failed to provide acceptable data or documentation concerning the transactions (567). *Id.* ¶ 18.

## II.    DISTRIBUTION PROCEDURE FOR THE NET SETTLEMENT FUNDS

A.B. Data proposes that the distribution of the Net Settlement Funds occur in two phases, starting with the Primary Distribution and followed by the Secondary Distribution involving any remaining funds.

**A. Claimants Receiving the $50 Minimum Payment**

All Authorized Claimants whose Distribution Amount is greater than $0 and less than $50 will receive a minimum payment of $50 ("Minimum Payment") during the Primary Distribution (the "Minimum Payment Claims"). Ewashko Decl. ¶ 46(b)(2).  Awarding a Minimum Payment ensures these Authorized Claimants will receive a meaningful payment without substantially reallocating the Net Settlement Funds.  The implementation of a payment floor also provides administrative savings that ensures the cost to administer these Claims does not exceed their value under the Distribution Plan. *Id.*  A total of 2,858 Authorized Claimants will receive the Minimum Payment, which totals 0.95% of the Net Settlement Funds. *Id.* ¶ 46(b)(2).  If these Minimum Payment Claims received their Distribution Amount, 0.15% of the Net Settlement Funds would be distributed. *Id.* ¶ 46(b)(2). The reallocation of 0.80% of the Net Settlement Funds to these Minimum Payment Claims is within the range accepted by courts for purposes of administrative cost savings. *See, e.g.*, *Alaska Elec. Pension Fund v. Bank of Am., Corp.*, No. 14-cv-7126 (JMF), 2020 WL 916853, at *2 (S.D.N.Y. Feb. 26, 2020) (approving $100 minimum payment, which totaled less than 1% of the settlement fund on basis that the minimum payment reduced claims administration costs); *GSE* Distribution Order (approving distribution motion where minimum payment reallocated approximately 1% of the Net Settlement Fund to save administrative costs, *see* Mem. of Law in Support of Plaintiffs' Motion for Entry of an Order Approving Distribution of the Net Settlement Fund to Authorized Claimants, *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR) (S.D.N.Y), ECF No. 447 (Dec. 3, 2020)); *Laydon* Distribution Order (approving distribution motion including a $100 minimum payment totaling 0.087% of the net settlement fund and reallocating 0.072% of the net settlement fund  to reduce administrative costs), *see* Mem. of Law in Support of Plaintiffs' Motion for Entry of an Order Approving Distribution of the Net

7

Settlement Fund, *Laydon*, ECF No. 1091 (Feb. 16, 2023); *SIBOR* Distribution Order (approving distribution motion including a $500 minimum payment where minimum payment reallocated 0.19% of the Net Settlement Fund to save administrative costs), *see* Mem. Of Law in Support of Plaintiffs' Motion for Entry of an Order Approving Distribution of the Net Settlement Fund, *SIBOR*, ECF No. 586 (July 14, 2023).

## B. Claimants Receiving Their Full Distribution Amount during the Primary Distribution

All Authorized Claimants whose Distribution Amount is greater than $50 and less than $5,000 will receive their full Distribution Amount in the Primary Distribution. Ewashko Decl. ¶ 46(b)(4). There are 1,359 Authorized Claimants whose Distribution Amount is between $50 and less than $5,000 based on their Transaction Claim Amount calculation. *Id.* Paying these Authorized Claimants in full during the Primary Distribution means fewer Authorized Claimants will need to be included in any subsequent distributions, reducing the administrative costs associated with such an effort.

## C. Claimants Receiving 90% of Their Distribution Amount in the Primary Distribution

The remaining 135 Authorized Claimants, whose Distribution Amount is equal to or greater than $5,000, will receive 90% of their Distribution Amount in the Primary Distribution. Ewashko Decl. ¶ 46(b)(5). So, for example, if Claimant X's Distribution Amount under the Distribution Plan is $100,000, it will receive $90,000 in the Primary Distribution.

The remaining 10% will be set aside in reserve to address any contingencies that may arise as well as to pay any further tax obligations, fees or expenses incurred through the administration of the Net Settlement Funds. *Id.* ¶ 46(b)(6). The establishment of a reserve is a customary practice of claim administrators in complex cases and has been approved by courts. *See, e.g.*, *Alaska Elec. Pension Fund*, 2020 WL 916853, at *2 (approving initial distribution with an 8% reserve); *GSE*

Distribution Order, at ¶ 3 (approving initial distribution with a 10% reserve); *Laydon* Distribution Order (approving initial distribution with a 10% reserve); *SIBOR* Distribution Order (approving initial distribution with a 10% reserve).

### D. Payment Terms and Secondary Distribution

Once the time to negotiate the distribution checks from the Primary Distribution has elapsed (approximately 90 days), and after reasonable efforts have been made to encourage Authorized Claimants to cash their checks, the proceeds from all void, stale-dated, or returned checks and failed wire transfers from the Primary Distribution will be combined with any funds set aside in reserve and made available for reallocation in a subsequent distribution. Ewashko Decl. ¶ 46(c)-(e).

After accounting for any outstanding fees and expenses of administration or other contingencies, and unless the Court approves a request by Lead Counsel to do otherwise, a Secondary Distribution (and any subsequent distributions) will allocate any funds that remain in reserve to all Authorized Claimants that: (a) received a Distribution Amount of $5,000 or more; and (b) negotiated their first distribution payments; and (c) are entitled to at least $50 from such redistribution based on their *pro rata* share of the remaining funds. *Id.* ¶ 46(e).

## III. RECORD RETENTION AND DESTRUCTION

Lead Counsel requests that A.B. Data be permitted to destroy paper and electronic copies of Claims one year after (a) the Net Settlement Funds in connection with the Settlements has been distributed; and (b) the Action has finally terminated. *See* Ewashko Decl. ¶ 46(f).

## IV. SETTLEMENT ADMINISTRATOR EXPENSES TO DATE AND COST TO COMPLETE DISTRIBUTION

To date, the costs of notice and administration for the Settlements totals $656,150.63, for which A.B. Data has been or will be paid in full. Ewashko Decl. ¶ 47. A.B. Data anticipates that

the additional cost to complete the administration for these Settlements and distribution of the Net Settlement Funds will be $41,500.64. *Id.* This cost includes the work described in the Ewashko Decl. Lead Counsel respectfully requests that the Court enter the Distribution Order, which authorizes payment of up to $41,500.64 for the costs and expenses expected to be incurred with the distribution of the Net Settlement Funds.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and enter the accompanying Distribution Order.

Dated: March 27, 2026
      White Plains, New York             Respectfully submitted,

                                      **LOWEY DANNENBERG P.C.**

                                      /s/ *Vincent Briganti*
                                      Vincent Briganti
                                      Margaret MacLean
                                      Roland R. St. Louis, III
                                      44 South Broadway, Suite 1100
                                      White Plains, NY 10601
                                      Tel.: (914) 997-0500
                                      Fax: (914) 997-0035
                                      Email: vbriganti@lowey.com
                                      Email: mmaclean@lowey.com
                                      Email: rstlouis@lowey.com

                                      *Plaintiffs' Lead Counsel*

---

[3] To the extent additional expenses are incurred beyond the $41,500.64 estimate, Lead Counsel will make an application to the Court to pay any additional administration expenses.

## CERTIFICATE OF COMPLIANCE

The undersigned attorney for Plaintiffs certifies that this memorandum complies with the type-volume and type size limitations contained in LR 7.1(b) and (c). The memorandum has 2,786 words in Times New Roman font type in font size 12.  The memorandum was prepared using Microsoft Word Office 365 which includes all text, including headings, footnotes, and quotations in the word count.

Dated: March 27, 2026

/s/ *Vincent Briganti*