UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE MEXICAN GOVERNMENT BONDS ANTITRUST LITIGATION

Master Docket No. 18-cv-02830

THIS DOCUMENT RELATES TO:

ALL ACTIONS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH BANCO SANTANDER MÉXICO, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER MÉXICO, BBVA MÉXICO, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BBVA MÉXICO, BANCO NACIONAL DE MÉXICO, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BANAMEX, DEUTSCHE BANK MÉXICO, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, HSBC MÉXICO, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO HSBC, AND BANK OF AMERICA MÉXICO, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. PROCEDURAL HISTORY ..... 2

III. SETTLEMENT TERMS AND PROPOSED DISTRIBUTION PLAN ..... 4

IV. CLASS NOTICE ..... 5

V. ARGUMENT ..... 6

A. The Settlement Is Fair, Reasonable and Adequate, Warranting Final Approval ..... 6

1. Rule 23(e)(2)(A) and (B): The Settlement Is Procedurally Fair ..... 7

a. Plaintiffs Have Adequately Represented the Class ..... 7

b. Plaintiffs' Lead Counsel Has Adequately Represented the Class ..... 8

c. The Proposed Settlement Was Negotiated at Arm's Length ..... 9

2. Rule 23(e)(2)(C) and (D): The Settlement Is Substantively Fair ..... 11

a. The Costs, Risks and Delay of Trial and Appeal (*Grinnell* Factors 1, 4, 5, and 6) Favor Approval ..... 11

b. The Reaction of the Settlement Class (*Grinnell* Factor 2) Supports Approving the Settlement ..... 14

c. The Stage of the Proceedings (*Grinnell* Factor 3) Demonstrates the Decision to Settle Was Well-Informed ..... 14

d. The Ability of Settling Defendants to Withstand a Greater Judgment (*Grinnell* Factor 7) Does Not Impact the Fairness of this Settlement ..... 15

e. The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation (*Grinnell* Factors 8 and 9) Support Approving the Settlement ..... 16

f. The Distribution Plan Is Fair and Equitable ..... 17

g. The Settlement Treats Class Members Equitably ..... 18

h. The Proposed Attorneys' Fees and Service Awards Ensure that the Settlement Class Receives Adequate Relief ..... 19

i. There Are No Other Unidentified Agreements That Impact the Settlement's Fairness ..... 20

B. The Proposed Settlement Class Should Be Finally Certified ..... 20

C. The Class Notice Satisfies Due Process ..... 22

VI. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Cases**

*Bano v. Union Carbide Corp.*,
273 F.3d 120 (2d Cir. 2001) ....................6

*Belton v. GE Cap. Consumer Lending, Inc.*,
No. 21-cv-9492 (CM), 2022 WL 407404 (S.D.N.Y. Feb. 10, 2022)....................9

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................11, 16

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)....................8

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ....................15

*Garland v. Cohen & Krassner*,
No. 08-CV-4626 (KAM), 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011)....................12

*In re 3D Sys. Sec. Litig.*,
No. 21-cv-1920 (NGG) (TAM), 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024)....................10

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
No. 02-cv-5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................13, 15

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 2594 (S.D.N.Y. 2012)....................21

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ....................8

*In re Currency Conversion Fee Antitrust Litig.*,
264 F.R.D. 100 (S.D.N.Y. 2010) ....................7

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01-MDL-1409, 2006 WL 32473966 (S.D.N.Y. Nov. 8, 2006) ....................17

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018)....................12, 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-cv-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................16

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................6

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)..........................................................................passim

*In re Interpublic Sec. Litig.*,
No. 02-cv-6527 (DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004 ..............................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
327 F.R.D. 483 (S.D.N.Y. 2018) ..................................................................................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11-md-2262, 2020 WL 6290596 (S.D.N.Y. Oct. 27, 2020) .......................................23

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ..................................................................................22

*In re Nasdaq Market-Makers Antitrust Litig.*,
176 F.R.D. 992 (S.D.N.Y. 1997) ..................................................................................17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................12, 13

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................10, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019).......................................................................6, 8, 11, 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016).............................................................................................7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................................6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
164 F.R.D. 336 (S.D.N.Y. 1996) ..................................................................................22

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
527 F. Supp. 3d 269 (E.D.N.Y. 2021) ...........................................................................22

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
No. 3:09-cv-1293 (VLB), 2012 WL 35896107 (D. Conn. Aug. 20, 2012) ........................17

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................................12

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)..................................................................................13

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................14

*Medina v. NYC Harlem Foods Inc.*,
No. 20 CV 1321, 2022 WL 11842606 (S.D.N.Y. Apr. 21, 2022)....................20

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 856 (2d Cir. 2019)....................18

*Meredith Corp. v. SESAC, LLC,*
87 F. Supp. 3d. 650 (S.D.N.Y. 2015)....................14, 15, 20

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023)....................passim

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972)....................16

*Phhhoto Inc. v. Meta Platforms, Inc.*,
123 F.4th 592 (2d Cir. 2024)....................13

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
No. 08-cv-42 (JG)(VVP), 2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015....................17

*Reyes v. Summit Health Mgmt., LLC*,
No. 22-cv-9916, 2024 WL 472841 (S.D.N.Y. Feb. 6, 2024)....................7, 9

*Shapiro v. JPMorgan Chase & Co.*,
No. 11-cv-8331 (CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)....................8, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)....................6, 7, 22, 23

*Weigner v. City of N.Y.*,
852 F.2d 6469 (2d Cir. 1988)....................22

**Rules**

Fed. R. Civ. P. 23(e)(2)....................6, 9, 11
FED. R. CIV. P. 23(e)(2)(A)–(B)....................7
FED. R. CIV. P. 23(e)(2)(D....................18
FED. R. CIV. P. 23(h....................19
FED. R. CIV. PROC. 23(g)....................8
Rule 23....................7, 11, 22
Rule 23(a....................21
Rule 23(b)(3....................21
Rule 23(e)(2)(A)....................7, 8
Rule 23(e)(2)(A) and (B)....................7
Rule 23(e)(2)(B)....................9
Rule 23(e)(2)(C) and (D)....................10

Rule 23(e)(2)(C) .......... 11
Rule 23(e)(2)(C)(iii .......... 19
Rule 23(e)(2)(C–D) .......... 11
Rule 23(e)(3 .......... 20
Rules 23(a) and (b)(3 .......... 20, 22

## I. INTRODUCTION

Plaintiffs'[1] motion for final approval of this Settlement marks the successful conclusion of a complex class action involving the alleged manipulation of the Mexican Government Bonds market. The Settling Defendants will pay $86.4 million into an all-cash, non-reversionary Settlement Fund, which, by all measures, is an excellent recovery and will result in substantial monetary benefits for the Settlement Class.

In granting preliminary approval of the Settlement, the Court found that it would likely be able to approve the Settlement under Rule 23(e)(2). Nothing has changed in the record upon which this Court previously granted preliminary approval—aside from the successful implementation of the Notice Plan, and the positive feedback from the Settlement Class.

Since this Court's Preliminary Approval Order[2], the Settlement Administrator has provided notice to the Settlement Class, and 29,461 Class Notices have been sent to potential Class Members, including the more than 4,300 Class Members that received a settlement payment from the prior settlement with Barclays and JPMorgan. Plaintiffs are pleased to report that, to date, there are no objections to the Settlement, Plaintiffs' Lead Counsel's request for attorneys' fees and expenses, or the request for Service Awards, and no Class Members have thus far opted out. As discussed herein, this positive reaction to the Settlement further highlights that the Settlement is in the best interests of the Class. Based on the Settlement's Distribution Plan, the Net Settlement Fund will be distributed *pro rata* among Authorized

---

[1] Plaintiffs are Oklahoma Firefighters Pension & Retirement System, Electrical Workers Pension Fund Local 103, I.B.E.W., Manhattan and Bronx Surface Transit Operating Authority Pension Plan, Metropolitan Transportation Authority Defined Benefit Pension Plan Master Trust, Boston Retirement System, Southeastern Pennsylvania Transportation Authority Pension Plan, United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund, and Government Employees' Retirement System of the Virgin Islands. Unless otherwise noted, capitalized terms used herein have the same meaning as defined in the Stipulation and Agreement of Settlement dated August 12, 2026 (the "Settlement Agreement") (ECF No. 382-1). Unless otherwise noted, internal citations and quotation marks are omitted, emphasis is added, and ECF citations are to the docket in this Action.

[2] Preliminary Approval Order refers to this Court's Order Preliminarily Approving Proposed Settlement with Settling Defendants dated August 19, 2026. ECF No. 384.

Claimants. The Claims Deadline is January 4, 2027, and the final payment amounts will be determined as the claims process and determinations are completed. This Court has previously approved the same Distribution Plan.

For these reasons and those that follow, Plaintiffs respectfully request that the Court grant final approval to the Settlement, finally certify the Settlement Class, and enter the Final Approval Order and Judgment dismissing the claims against Settling Defendants with prejudice on the merits, in the form of the proposed order to be filed with the Court.

## II. PROCEDURAL HISTORY[3]

This action has been litigated for more than eight years. It has gone through three rounds of motions to dismiss, an appeal to the Second Circuit, two prior class settlements, and the initial stages of merits discovery. Briganti Decl. ¶¶ 10, 22, 31, 49, 58. Plaintiffs' Lead Counsel filed the first class action complaint on March 30, 2018, on behalf of Oklahoma Firefighters Pension & Retirement System and Electrical Workers Pension Fund Local 103, I.B.E.W. *Id.*, ¶ 17. The complaint alleged that Defendants conspired to fix prices and rig auctions in the market for Mexican Government Bonds, and it followed a months-long investigation. *Id.*, ¶¶ 11-16. Five related complaints were filed in May 2018. *Id.*, ¶ 18. On June 18, 2018, the Court consolidated the actions and appointed Lowey Dannenberg, P.C. ("Lowey" or "Plaintiffs' Lead Counsel") interim class counsel. *Id.*, ¶ 19. Plaintiffs filed a Consolidated Amended Complaint on July 18, 2018, adding six plaintiffs and two defendant families. *Id.*, ¶20. The Court granted defendants' joint motion to dismiss for failure to state a claim on September 30, 2019. *Id.*, ¶ 25.

While the pleadings were being litigated, Plaintiffs reached early settlements with Barclays for $5.7 million and JPMorgan for $15 million in 2020. *Id.*, ¶¶ 26, 78. Barclays and

[3] A full description of the procedural history of this case is included in the Declaration of Vincent Briganti dated October 15, 2026 ("Briganti Decl.") in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement; and (B) Plaintiffs' Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, and Plaintiffs' Application for Service Awards, filed herewith.

JPMorgan provided proffers and thousands of pages of documents, including interbank chat transcripts. *Id.*, ¶¶ 38, 44, 47. Plaintiffs contend this cooperation helped cure the pleading deficiencies the Court had identified. *Id.*, ¶¶ 26, 39.

Plaintiffs filed their Second Amended Complaint on December 9, 2019. It incorporated Defendant-specific allegations supporting Plaintiffs' claims, which were developed after many additional hours of investigation. *Id.*, ¶ 28. On November 30, 2020, the Court dismissed the Second Amended Complaint for lack of personal jurisdiction without reaching the merits. The Court denied reconsideration and entered final judgment. *Id.*, ¶ 33.

Plaintiffs appealed the dismissal of the Second Amended Complaint on September 15, 2022. *Id.*, ¶ 49. On February 9, 2024, the Second Circuit vacated the dismissal and remanded, holding that Plaintiffs had adequately alleged personal jurisdiction over the remaining defendants. *Id.*, ¶ 52. Plaintiffs filed their Third Amended Complaint on June 12, 2024. *Id.*, ¶ 16. On January 15, 2025, the Court denied the Settling Defendants' motion to dismiss, finding that the chatroom transcripts adequately alleged price-fixing agreements and that Plaintiffs had adequately pleaded antitrust standing, unjust enrichment, and fraudulent concealment for purposes of a motion to dismiss. *Id.*, ¶ 56.

After the Court's decision, the Parties engaged in discovery. The Court entered a stipulated protective order and an ESI protocol, and the Parties proceeded with the initial stages of document and data discovery. *Id.*, ¶ 58. The Court also set various deadlines, including a class certification deadline of June 1, 2026 and a fact discovery cutoff of July 18, 2026. *Id.* Simultaneously, the Parties engaged in settlement negotiations, beginning in August 2025 under mediator Gregory P. Lindstrom of Phillips ADR Enterprises. *Id.*, ¶ 63. A mediation session on January 13, 2026 ended without agreement. *Id.*, ¶ 65. Three months of proposals and counterproposals followed before the Parties met again in person at A&O Shearman on May 11, 2026 and reached an agreement in principle. *Id.*, ¶¶ 66, 67-68. The Parties signed the

Stipulation and Agreement of Settlement on August 12, 2026. *Id.*, ¶ 69. This Settlement creates an $86.4 million settlement fund and brings the total recovery in the Action to $107.1 million. This Court granted preliminary approval to the Settlement on August 19, 2026. If finally approved, this Settlement will fully resolve this Action.

## III. SETTLEMENT TERMS AND PROPOSED DISTRIBUTION PLAN

The Settling Defendants will pay $86,400,000 into a Settlement Fund, to be distributed to Class Members, less deductions made for the payment of taxes, settlement administration expenses, attorneys' fees, litigation costs and expenses, Service Awards, and any other charges authorized by the Court (the "Net Settlement Fund"). *See* Settlement Agreement, § 1(Y). The Settlement is non-reversionary: once final approval is granted, no money goes back to the Settling Defendants no matter how many Class Members file claims. *See* Settlement Agreement, §§ 3, 9. In exchange, the claims against the Settling Defendants will be dismissed with prejudice on the merits and Releasing Parties "shall release and be deemed to release and forever discharge and shall be forever enjoined from prosecuting the Released Claims against the Released Parties." Settlement Agreement, § 11(A). Class members who do not want to be bound may opt out. A supplemental agreement gives the Settling Defendants the right to terminate before final approval under certain circumstances. *See* Settlement Agreement, § 22.

The Distribution Plan is the same as the plan previously approved by the Court (*see* ECF Nos. 270, ¶ 20; 271, ¶ 20) and allocates the Net Settlement Fund *pro rata* among Authorized Claimants, based on each claimant's duration-adjusted notional (or principal) volume of Mexican Government Bond trading. ECF No. 211-7 ¶¶ 7-10. The weighting uses a "Risk Number," a standard measure of how sensitive a bond's price is to changes in yield; bond prices move inversely to yields. *Id.* ¶ 7. Each Mexican Government Bond Transaction is assigned to one of 31 categories according to the bond's remaining years to maturity at the time of purchase or sale. Each category has its own Risk Number and a Multiplier derived from it.

*Id.* To calculate an Authorized Claimant's duration-adjusted trading volume, the Settlement Administrator multiplies the claimant's notional volume in each category by that category's Multiplier and adds the results across all categories. *Id.* ¶ 9.

## IV. CLASS NOTICE

Pursuant to the Preliminary Approval Order, the Settlement Administrator, A.B. Data, Ltd. ("A.B. Data"), commenced the notice plan as contemplated by the Settlement Agreement and as described in the Declaration of Elaine Pang dated August 12, 2026. ECF No. 382-2.

A.B. Data sent the Mailed Notice (the "Notice Packet") by First-Class Mail to potential Settlement Class Members, including those individuals and entities that submitted a claim in connection with the Barclays and JPMorgan settlements. Declaration of Jack Ewashko on Behalf of A.B. Data, Ltd. Regarding Notice and Claims Administration for Class Action Settlement dated October 15, 2026 ("Ewashko Decl.") ¶ 10. Beginning on September 18, 2026, A.B. Data mailed the Notice to potential Settlement Class Members and nominees, and as of October 13, 2026, 29,461 Notices had been mailed. *Id.* ¶ 10. Notices that were returned by USPS as undeliverable with a forwarding address were re-mailed to that forwarding address. *Id.* ¶ 11. As a result of the above-described efforts, of the 172 Notices returned as undeliverable by USPS, 74 were re-mailed to updated addresses by A.B. Data. *Id.* Only 98 Notices, less than 1%, could not be delivered. *Id.* ¶ 11. Along with a direct notice campaign, A.B. Data also implemented a paid and earned media notice campaign, which included issuing the Summary Notice as a press release via PR Newswire, publishing the Summary Notice in various business-focused publications, trade websites and other targeted websites, and placing banner and newsfeed ads in premium positions on relevant websites and electronic communications. *Id.* ¶¶ 12-17. A.B. Data also caused the Settlement Website (https://mgbantitrustsettlement.com) to be updated with details of the Settlement, preliminary approval documents and Preliminary Approval Order, an updated claims filing portal for any

Class Members who did not previously file a Claim, copies of the Claim Form, important dates, and other information. *Id.* ¶ 18. A.B. Data also continues to maintain a toll-free number where potential Class Members can call for more information relating to this Action or the Settlement. To date, following this robust notice, there have been no objections and no requests for exclusion. *Id.* ¶ 21. The Claims Deadline is set for January 4, 2027, and the Objection and Exclusion Deadlines are set for October 29, 2026. Plaintiffs' Lead Counsel will provide an update on any developments on or before November 5, 2026.

## V. ARGUMENT

### A. The Settlement Is Fair, Reasonable and Adequate, Warranting Final Approval

Public policy favors the resolution of class actions through settlement. *See, e.g., Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). Courts in this Circuit recognize a "strong judicial policy in favor of settlements, particularly in the class action context." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (quoting *Wal-Mart*, 396 F.3d at 116); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). In approving a settlement, courts look at Rule 23(e)(2), which establishes the four "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal": adequacy of representation, existence of arm's-length negotiations, adequacy of relief, and equitableness of treatment of class members. *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (quoting Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment). "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Id.* In considering the substantive

fairness of the Settlement, the Court may consider the "useful framework" of the *Grinnell* factors (enumerated *infra*). *Id.* at 243. Applying these factors to the Settlement here demonstrates final approval of the Settlement is warranted.

**1. Rule 23(e)(2)(A) and (B): The Settlement Is Procedurally Fair**

To approve a class action settlement, Rule 23 requires the Court to find in part that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)–(B). Where a settlement is the product of "arm's-length negotiations" following "extensive pre-negotiation discovery" conducted by "experienced counsel," it "counsels in favor of approving the settlement." *Reyes v. Summit Health Mgmt., LLC*, No. 22-cv-9916, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024).

**a. Plaintiffs Have Adequately Represented the Class**

Rule 23(e)(2)(A) requires that the "interests . . . served by the Settlement [are] compatible with" those of the class members. *Wal-Mart*, 396 F.3d at 110; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 827 F.3d 223, 232 (2d Cir. 2016) (the focus for adequacy is whether the interests of the proposed settlement class are "sufficiently cohesive to warrant adjudication"). This factor is satisfied where, like here, the class representative's interests are aligned with, and not antagonistic to, those of the class. *See In re Currency Conversion Fee Antitrust Litig*., 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010); *see also Wal-Mart*, 396 F.3d at 106-07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim."). Plaintiffs here suffered the same alleged injury as other Class Members: monetary losses resulting from Mexican Government Bond Transactions impacted by Defendants' alleged collusion. The Class, including Plaintiffs, allegedly paid artificial prices for Mexican Government Bond Transactions, and therefore all Plaintiffs have

"an interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

**b. Plaintiffs' Lead Counsel Have Adequately Represented the Class**

Rule 23(e)(2)(A) also requires the Court to assess the adequacy of class counsel. *Payment Card*, 330 F.R.D. at 30 (considering whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation"); *accord* FED. R. CIV. PROC. 23(g). With the assistance of Plaintiffs' Counsel,[4] Plaintiffs' Lead Counsel have led the prosecution of this Action since its inception, through the multiple rounds of briefing, appeal, discovery, and the settlement negotiations, to achieve this excellent result for the Class. Briganti Decl., ¶¶ 22, 50, 63-68. Plaintiffs' Lead Counsel and the additional Plaintiffs' Counsel diligently worked together to advance the interests of Plaintiffs and the Class, dedicating a total of 19,771.25 hours to the successful prosecution of this Action. *Id.*, ¶ 85. Plaintiffs' Lead Counsel and additional Plaintiffs' Counsel have decades of experience leading some of the most complex class actions, including antitrust class actions, on behalf of investors. Plaintiffs' Lead Counsel's extensive complex and class action litigation experience, along with their extensive efforts in achieving the Settlement, provides strong evidence that the Settlement is procedurally fair. *See* ECF No. 382-6 (Lowey firm résumé); *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive" experience of counsel in granting final approval of settlement), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010); *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-8331 (CM)(MHD), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair).

[4] "Plaintiffs' Counsel" means Plaintiffs' Lead Counsel, Berman Tabacco ("Berman"), Hausfeld LLP ("Hausfeld"), Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), Scott+Scott Attorneys at Law LLP ("Scott+Scott"), Radice Law Firm, P.C. ("Radice"), Bleichmar Fonti & Auld LLP ("Bleichmar"), Barrack, Rodos & Bacine ("Barrack"), and Calcaterra Pollack LLP ("Calcaterra Pollack").

### c. The Proposed Settlement Was Negotiated at Arm's Length

"Previously, settlements negotiated at arm's length enjoyed a presumption of fairness. However, the Second Circuit has since clarified that 'Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length.'" *Reyes*, 2024 WL 472841, at *3, n.3 (quoting *Moses,* 79 F.4th at 243). "Rule 23(e)(2)(B) requires a court to consider whether the proposed settlement was negotiated at arm's length" and "[t]he existence of arm's-length negotiations further counsels in favor of approving the settlement[.]" *Reyes*, 2024 WL 472841, at *3. To further assess the integrity of the process, the key question is whether "plaintiffs' counsel is sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019).

As the detailed declarations filed with the preliminary approval motion and this final approval motion show, the Settlement was reached after extensive arm's-length, non-collusive negotiations, including multiple conference calls with Gregory P. Lindstrom of Phillips ADR Enterprises. *See* Declaration of Vincent Briganti in support of Preliminary Approval (ECF No. 382) ("Prelim. App. Decl.") ¶ 33; Briganti Decl., ¶¶ 65, 66-67. Before and during the January 13, 2026 mediation, the Parties exchanged their legal theories, evidence, and the strengths and weaknesses of their respective cases. *See* Prelim. App. Decl., ¶¶ 34, 35; Briganti Decl., ¶¶ 63-66. Although no resolution was reached at either the conference calls or mediation session, the Parties continued their hard-fought negotiations. On May 11, 2026, the Parties held an in-person settlement conference at the offices of A&O Shearman in New York City and, after several hours of negotiations, reached an agreement in principle. Prelim. App. Decl., ¶¶ 37, 38; Briganti Decl., ¶ 67; *see also Belton v. GE Cap. Consumer Lending, Inc.*, No. 21-cv-9492 (CM), 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022) (negotiations that "included a mediation session with an experienced and highly regarded mediator … were thorough and

hard fought, and free from any undue pressure or collusion"). At all times, Plaintiffs' Lead Counsel had a sufficient basis on which to recommend that Plaintiffs enter into the Settlement, which weighs in favor of finding that the Settlement is procedurally fair and should be approved. This included hundreds of hours of research, cooperation materials from JPMorgan and Barclays, and the information exchanged during the mediation process. *See In re 3D Sys. Sec. Litig.*, No. 21-cv-1920 (NGG) (TAM), 2024 WL 50909, at *9 (E.D.N.Y. Jan. 4, 2024) (finding procedural fairness in a proposed settlement where "the parties gained sufficient information about the claims through mediation and settlement discussions to allow them to make a reasoned evaluation of the chances of success").

Although Plaintiffs' Lead Counsel believe that Plaintiffs' claims have merit, they nevertheless recognize the expense and uncertainty of continued litigation against Settling Defendants, which maintain that they have strong defenses. In recommending that the Court approve this Settlement, Plaintiffs' Lead Counsel have accounted for the defenses asserted by Settling Defendants, the procedural history and the risks of further litigation. Indeed, such risks materialized before when the Court dismissed Plaintiffs' Second Amended Complaint for lack of personal jurisdiction. Given Plaintiffs' Lead Counsel's considerable prior experience in complex class action litigation involving such claims (among others), their knowledge of the strengths and weaknesses of Plaintiffs' claims asserted in this Action, their assessment of the Settlement Class's likelihood of recovery following trial and appeal, and their experience negotiating with each of the Settling Defendants, there is a strong basis to conclude that the compromise reached here is fair and reasonable. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) (observing that "great weight" is given to the advice of experienced counsel).

**2. Rule 23(e)(2)(C) and (D): The Settlement Is Substantively Fair**

The substantive fairness of the Settlement is established by its satisfaction of the last two Rule 23(e)(2) factors: the adequacy of relief provided to the class and the equitable treatment of class members. *Moses*, 79 F.4th at 244. In addition, courts in the Second Circuit may also consider the *Grinnell* factors: (1) the complexity, expense, and likely duration of litigation, (2) the reaction of the class to the settlement, (3) the stage of proceedings and amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining a class action through trial, (7) the ability of defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund compared to a possible recovery in light of all the attendant risks of litigation. *See City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974).[5]

**a. The Costs, Risks and Delay of Trial and Appeal (*Grinnell* Factors 1, 4, 5, and 6) Favor Approval**

Rule 23(e)(2)(C)(i) "implicates several *Grinnell* factors, including [factors 1, 4, 5, and 6]: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Payment Card*, 330 F.R.D. at 36; *see also GSE Bonds*, 414 F. Supp. 3d at 693. In evaluating this factor, the Court's role is to "balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *Id.* at 694; *see also Shapiro*, 2014 WL 1224666, at *10 (noting that, at final approval, the court's role is not to "decide the merits of the case or resolve unsettled legal questions or to foresee

[5] The Rule 23(e)(2) factors complement the *Grinnell* factors. *See GSE Bonds*, 414 F. Supp. 3d at 692 ("The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors."); *accord Payment Card*, 330 F.R.D. at 29 ("Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C–D) factors . . .").

with absolute certainty the outcome of the case" but rather to "assess the risks of litigation against the certainty of recovery under the proposed settlement.").

"[C]lass action suits in general have a well-deserved reputation as being the most complex." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999). Accordingly, "it is reasonable to assume" that, without a settlement, continued litigation will require "extensive time and expense." *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011).

As courts have found previously, antitrust cases require a significant expenditure of time and resources, and this case is no exception. *GSE Bonds*, 414 F. Supp. 3d at 693 ("federal antitrust cases are complicated, lengthy, and bitterly fought as well as costly. . . ."); *Payment Card*, 330 F.R.D. at 36 ("Because of the complexity and difficulty of the issues in this case, it requires, and would continue to require, costly counsel and experts, and a wealth of time."). This case required a thorough understanding of a complicated Mexican Government Bond market. The suit was undertaken against multiple defendants—some of the world's largest financial institutions—that were represented by some of the biggest U.S. law firms, which made this case both highly complex and risky to pursue. The Court previously dismissed Plaintiffs' Second Amended Complaint, which required Plaintiffs to litigate at the appellate level. There was no guarantee that an appellate court or this Court would sustain Plaintiffs' claims.

Plaintiffs would also face challenges from Defendants at class certification and proving in liability and damages. Given the expert analysis required, and the number of parties involved, continued litigation would be prolonged and expensive. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020) (experts "tend[] to increase both the cost and duration of litigation"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (*NASDAQ III*)

(discussing the difficulties of proving antitrust liability where plaintiffs had to prove, among other things, a complex conspiracy involving a large number of defendants, a common motive, actions against defendants' financial interest and/or evidence of coercion); *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig*., No. 02-cv-5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("[T]he process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement.").

Those risks were present here. Although the Second Circuit held that Plaintiffs adequately alleged personal jurisdiction, it emphasized that jurisdiction must ultimately be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. ECF No. 294 at 4 n.1. Settling Defendants also argued that all claims arising before March 30, 2014 were time-barred. ECF No. 333 at 17. The Court rejected that argument at the pleading stage but recognized that the allegations concerning Plaintiffs' diligence "can be disputed and potentially disproven in the discovery process." *Id.* at 23 (quoting *Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 613 (2d Cir. 2024)). Had Settling Defendants prevailed on either defense at summary judgment or trial, the Class's recovery could have been significantly reduced or eliminated entirely.

Even if Plaintiffs had been successful at the class certification and summary judgment stages, a trial would present its own challenges. There is no doubt that at trial the parties would engage in a "battle of the experts" regarding proof of damages. *NASDAQ III*, 187 F.R.D. at 476. "In this battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig*., 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

Although Plaintiffs and Plaintiffs' Lead Counsel firmly believe that the asserted claims are meritorious, and they would zealously prosecute those claims to prevail at trial, Plaintiffs' Lead Counsel's judgment is that there are substantial risks attendant to the continued prosecution of the claims, and the Settlement recognizes and eliminates these risks.

#### b. The Reaction of the Settlement Class (*Grinnell* Factor 2) Supports Approving the Settlement

In preliminarily approving the Settlement, the Court was able to evaluate all the *Grinnell* factors except the second—the reaction of the class to the settlement. Since the Preliminary Approval Order, notice has been issued, and the reaction of the Settlement Class has been positive to date. *See generally*, Ewashko Decl.

While Class Members still have time to file claims, object, or opt out, the Settlement Class's reaction so far supports approval. More than 29,000 Notice Packets have been sent to Class Members. To date, no objections have been filed and no requests for exclusion have been received. Ewashko Decl., ¶ 21. "A positive reaction of the class to the proposed settlement favors its approval by the Court." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d. 650, 663 (S.D.N.Y. 2015). The class's reaction to a proposed settlement is an important factor to be weighed in considering its fairness and adequacy. *See Maley v. Del Glob. Techs. Corp*., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."). Plaintiffs' Lead Counsel and the Settlement Administrator will submit updated papers concerning the Class's reaction after the October 29, 2026 deadline for objections and opt-out requests.

#### c. The Stage of the Proceedings (*Grinnell* Factor 3) Demonstrates the Decision to Settle Was Well-Informed

The third *Grinnell* factor considers the amount of discovery completed, with a "focus[] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate

their case and to assess the adequacy of any settlement proposal." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *7 (S.D.N.Y. Sept. 9, 2015).

Plaintiffs have been litigating this case for over eight years. During this time, Plaintiffs have filed four complaints, litigated three rounds of motions to dismiss, prevailed before the Second Circuit, obtained proffers and thousands of pages of cooperation materials through the prior settlements with JPMorgan and Barclays, and engaged in multiple rounds of settlement negotiations, including a formal mediation and an in-person settlement conference. *See generally*, Briganti Decl. After the Court denied Settling Defendants' motion to dismiss the Third Amended Complaint, Plaintiffs also pursued document and data discovery from Settling Defendants, including negotiating a stipulated protective order and ESI protocol, and consulted with economists to develop the methodologies needed to certify a litigation class and prove classwide impact. *Id.* ¶¶ 58-61. Plaintiffs' Lead Counsel have more than sufficient information to assess the Settlement, with a full understanding of the strength and weaknesses of both sides' positions. Plaintiffs' Lead Counsel also have extensive experience litigating such complex cases, which further informs their recommendation that this Settlement be finally approved.

#### d. The Ability of Settling Defendants to Withstand a Greater Judgment (*Grinnell* Factor 7) Does Not Impact the Fairness of this Settlement

While there is no evidence that Settling Defendants could not withstand a greater judgment, courts have regularly held that, "against the weight of the remaining factors, this fact alone does not undermine the reasonableness of [a settlement]." *GSE Bonds*, 414 F. Supp. 3d at 696; *see also AOL Time Warner,* 2006 WL 903236, at *12 ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair"). Indeed, "[a] defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Meredith Corp.*, 87 F. Supp. 3d at 665. Accordingly, the Court need not find that Settling Defendants could not withstand a greater judgment to conclude the Settlement is fair, reasonable, and adequate.

**e. The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation (*Grinnell* Factors 8 and 9) Supports Approving the Settlement**

"In considering these factors, 'the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495 (S.D.N.Y. 2018). In fact, courts in this Circuit have approved of settlements where the plaintiffs did not offer a damages estimate at all. *See id*. This is because "some risks would be attendant upon continuing to litigate." *GSE Bonds*, 414 F. Supp. 3d at 696; s*ee also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM)(PED), 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) ("[T]he issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case."). "[I]n any case there is a range of reasonableness with respect to a settlement" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). With this in mind, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 455 n.2.

If approved, the Settlement will provide $86.4 million less any authorized fees, costs and expenses, for the Class Members' benefit. Assuming Plaintiffs prevailed on every triable issue, their experts estimate single (i.e., non-trebled) classwide damages of $250,000,000 to $380,000,000, based on recently available information. Prelim. App. Decl., ¶ 47; Briganti Decl. ¶ 77. Combined with the Barclays and JPMorgan settlements, the total recovery of $107,100,000 represents 28% to 42.8% of that estimate. Briganti Decl., ¶ 78. Alone, this $86.4

million Settlement represents approximately 22.7% to 34.6% of estimated single damages. A recovery at that level falls comfortably within, and in many respects above, the range courts in this District regularly approve. *See, e.g., GSE Bonds*, 414 F. Supp. 3d at 697 (13–17%); *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MDL-1409, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (10–15%); *In re Interpublic Sec. Litig.*, No. 02-cv-6527 (DLC), 2004 WL 2397190, at *8 (S.D.N.Y. Oct. 26, 2004) (10–20%); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09-cv-1293 (VLB), 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (3.5%). The Settlement's consideration therefore is fair, reasonable, and adequate. *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

**f. The Distribution Plan Is Fair and Equitable**

To warrant approval, a Distribution Plan must be fair and adequate. *In re Facebook*, 343 F. Supp. 3d at 414. "The formula established for allocation 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Id.* "Whether the allocation plan is equitable is 'squarely within the discretion of the district court.'" *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 (JG)(VVP), 2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015) (quoting *In re PaineWebber*, 171 F.R.D. at 132).

Here, Plaintiffs' Lead Counsel propose the same Distribution Plan that was previously approved. *See* ECF Nos. 211-7; 270; 271. Under the proposed Distribution Plan, the Net Settlement Fund will be allocated on a *pro rata* basis according to a duration-adjusted weighting of each Authorized Claimant's notional (or principal) trading volumes of Mexican Government Bonds, with transactions categorized into 31 categories based on the remaining years to maturity when purchased or sold. Prelim. App. Decl., ¶¶ 50-51; Briganti Decl. ¶ 80. *See also GSE Bonds*, 414 F. Supp. 3d at 694-95 (approving a similar allocation plan to distribute the net settlement fund of an antitrust settlement involving GSE Bonds); Order, *In*

*re European Gov't Bonds Antitrust Litig.*, No. 19-cv-02601 (VM) (S.D.N.Y. Dec. 9, 2024), ECF No. 529 (approving a similar allocation plan to distribute the net settlement fund of an antitrust settlement involving European Government Bonds). Using the same methodology the Court has already approved keeps distributions across the settlements consistent. It also avoids the cost of and delay in building a new allocation framework. Its successful implementation for the prior settlements shows that it can be administered efficiently. The Court should therefore approve the Distribution Plan for use with this Settlement.

**g. The Settlement Treats Class Members Equitably**

"Prior to approving a settlement, the court must take into account whether the 'proposal treats class members equitably relative to each other.'" *Moses*, 79 F.4th at 244 (quoting FED. R. CIV. P. 23(e)(2)(D)). Here, the Settlement Agreement does not give preference to any individual or category of Class Members, including the Plaintiffs. The Distribution Plan will distribute the Settlement on a *pro rata* basis to Class Members according to their trading volume, ensuring equitable treatment. All Class Members were exposed to the same Notice, which among other things, provided information on how to request exclusion from the Settlement; absent opting out, each Class Member will be bound by the release.

Even though Plaintiffs here are requesting Service Awards, this does not make the treatment inequitable. Rule 23(e)(2)(D)'s equitable-treatment requirement is "harmonious with, and promoted by, [the Second Circuit's] clear precedent that permits district courts to approve fair and appropriate incentive awards to class representatives." *Moses*, 79 F.4th at 253 (citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019)). The equitable-treatment requirement protects the interests of class representatives who play an active role in the litigation from "having absent class members free ride on their efforts" and protects absent class members from excessive and unfair incentive awards. *Moses*, 79 F.4th at 245.

### h. The Proposed Attorneys' Fees and Service Awards Ensure that the Settlement Class Receives Adequate Relief

Courts may award reasonable attorneys' fees that are authorized by law or by the parties' agreement. FED. R. CIV. P. 23(h). In class action litigation, the attorneys who secure a recovery for a class are generally "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). By awarding fees payable from the fund, the court spreads litigation costs proportionally among those who will benefit from the Settlement Fund. *Id.* In *Moses*, the Second Circuit addressed Rule 23(e)(2)(C)(iii)'s requirement that the Court take into account "the terms of any proposed award of attorney's fees" in evaluating the fairness of a settlement, providing for "[t]he symbiotic review of proposed relief and attorneys' fees," in recognition that "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." 79 F.4th at 244 (citation modified). Consistent with *Moses*, the requested fees and expenses are reasonable in light of the relief actually delivered: the Settlement is an all-cash, non-reversionary fund, and the Settlement Class will receive the entire Net Settlement Fund, which is the majority of the Settlement Fund.

As fully described in Plaintiffs' Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, and Plaintiffs' Application for Service Awards and accompanying declarations, the percentage of attorneys' fees requested (29.34% of the Settlement Fund) is reasonable because it reflects market rates and is within the range of attorneys' fee awards made in cases of similar or less complexity in this District. The requested percentage is also based on an *ex ante* retainer agreement negotiated with two of the institutional-investor Plaintiffs.[6] Briganti Decl. ¶ 9. It is also below the one-third maximum disclosed to the Settlement Class in the Court-approved Notice. *See* Plaintiffs' Lead Counsel's Motion for an

[6] Boston Retirement System's position is that, while no cap on fees was negotiated with its counsel (Wolf Haldenstein) at the inception of this litigation, it typically imposes a 29% maximum fee on counsel in cases of this kind, and therefore it prefers that the final fee award be at a 29.0% rate.

Award of Attorneys' Fees and Expenses, and Plaintiffs' Application for Service Awards, filed herewith. In addition to the request for attorneys' fees, Plaintiffs' Counsel's request for reimbursement of expenses incurred in the litigation is reasonable. *See Meredith Corp.*, 87 F. Supp. 3d at 671 (reasonably incurred expenses may be reimbursed from the settlement fund). Finally, the requested service awards of $10,000 for each of the eight Plaintiffs ($80,000 total) are modest and recognize Plaintiffs' efforts on behalf of the Settlement Class. Briganti Decl. ¶ 9.

**i. There Are No Other Unidentified Agreements That Impact the Settlement's Fairness**

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal" for settlement. FED. R. CIV. P. 23(e)(3). Here, all agreements related to and/or impacting the Settlement have been disclosed, including supplemental agreement granting Settling Defendants a qualified right to terminate the Settlement under certain circumstances before final approval. Settlement Agreement, § 22. Such a provision is common in class action settlements. *Medina v. NYC Harlem Foods Inc.*, No. 20 CV 1321, 2022 WL 1184260, at *6 (S.D.N.Y. Apr. 21, 2022) (approving settlement containing a blow provision).

### B. The Proposed Settlement Class Should Be Finally Certified

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith Corp.*, 87 F. Supp. 3d at 659. When the Court preliminarily approved the Settlement, it found that the Settlement Class preliminarily satisfied the requirements of Rules 23(a) and (b)(3). ECF No. 384, ¶ 3. There have been no changes that would undermine the Court's initial determination or alter the analysis set forth at the preliminary approval stage. For the same reasons previously set forth at preliminary settlement approval (ECF No. 381, at 20–22), the Court should grant final certification of the Class for

purposes of the Settlement. *See In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the propriety of [the court's] findings" at the preliminary approval stage).

As the Court found when it granted preliminary approval, the Settlement Class satisfies each requirement of Rule 23(a). First, the class is sufficiently numerous. It consists of thousands of geographically dispersed persons and entities as evidenced by the more than 4,300 Class Members that received payments from the prior settlements alone, which makes joinder impracticable. Prelim. App. Decl. ¶ 49; Briganti Decl. ¶ 79. Second, commonality is satisfied because Class Members allege the same economic injury arising from the same alleged antitrust violation. Their claims present common questions, including whether Defendants and their co-conspirators conspired to fix prices, widen bid-ask spreads, and rig auctions of Mexican Government Bonds. *GSE Bonds*, 414 F. Supp. 3d at 700. Third, typicality is satisfied because every Class Member's claim arises from the same course of conduct: the alleged manipulation of the market for Mexican Government Bonds and of the prices of Mexican Government Bond Transactions. *Id.* at 700–01 (finding typicality satisfied in an antitrust price-fixing conspiracy). Finally, Plaintiffs are adequate representatives. Their interests are fully aligned with those of the Settlement Class, and Plaintiffs' Lead Counsel have vigorously represented the Settlement Class for the past eight years. *See supra* Section V.A.1.a-b.

The Settlement Class also meets the predominance and superiority requirements of Rule 23(b)(3). Predominance is met because common questions predominate, including questions about personal jurisdiction, the existence of conspiracy, unlawful manipulation, and resulting damages. *GSE Bonds*, 414 F. Supp. 3d at 701–02. Superiority is met because the Settlement Class is large and geographically dispersed, which makes a class action the superior way to resolve these claims. *Id.* at 702.

Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

**C. The Class Notice Satisfies Due Process**

While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124 (S.D.N.Y. 2008) (citing *Wal-Mart*, 396 F.3d at 113–14). Notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 336, 338 (S.D.N.Y. 1996) (finding due process does not require that every class member receive actual notice if reasonable means are chosen that are likely to inform persons affected).

In its Preliminary Approval Order, the Court found that the Notice Program is reasonable and fully satisfies all requirements of Rule 23 and due process. Preliminary Approval Order, ¶ 17. Since then, the Settlement Administrator has effectuated the Notice Program, disseminating information directly to Settlement Class Members where practicable and also implementing a robust publication notice program. Ewashko Decl. ¶¶ 10–17. A.B. Data mailed and remailed copies of the Notice Packet to 29,461 Settlement Class Members. *Id.* ¶ 10. The direct-mailed Notice efforts successfully reached more than 99% of Settlement Class Members. *Id.* ¶ 11. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf ("A high percentage [of the class] (e.g., between 70–95%) can often reasonably be reached by a notice campaign."); *see also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (citation omitted) (observing that "a notice plan that reaches between 70 and

95 percent of the class is reasonable," and endorsing a notice plan with only 80% expected reach).

A.B. Data established a toll-free number for Settlement Class Members to call and obtain additional information regarding the Settlement. Ewashko Decl. ¶ 20. It also established, maintains, and periodically updates the Settlement Website, which contains answers to FAQs, important litigation and Settlement documents (including the Long Form Notice and Claim Form), information about the Settlement, information about how to object to or request exclusion from the Settlement, and information about the Final Approval Hearing. The Notice adequately set out the Settlement's essential terms and informed the potential Settlement Class Members of, among other things, their right to request exclusion from the Settlement Class or object to the Settlement, as well as the procedure for submitting a Claim Form.

The Notice Plan—inclusive of the Mailed Notice, Summary Notice, Claim Form, and Settlement Website—satisfies due process. The Class Notice and Settlement Website are written in clear and concise language and reasonably convey the necessary information to the average Class Member. *See Wal-Mart*, 396 F.3d at 114. By October 29, 2026, Class Members will have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court. The Court should therefore find that the Notice plan was reasonable and satisfied due process. Comparable programs involving direct and digital notice are routinely approved by courts in this Circuit. S*ee, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig*., No. 11-md-2262, 2020 WL 6290596, at *3 (S.D.N.Y. Oct. 27, 2020).

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement, finally certify the Settlement Class, and enter the proposed Final Approval Order and Judgment dismissing with prejudice the claims against the Settling Defendants.

Dated: October 15, 2026
White Plains, New York

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

*/s/ Vincent Briganti*
Vincent Briganti
Margaret Maclean
Roland R. St. Louis, III
44 South Broadway
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
Email: vbriganti@lowey.com
mmaclean@lowey.com
rstlouis@lowey.com

*Plaintiffs' Lead Counsel*

Joseph J. Tabacco, Jr.
Todd Seaver
Carl N. Hammarskjold
BERMAN TABACCO
101 Montgomery Street, Suite 600
San Francisco, CA 94104
Tel.: (415) 433-3200
Fax: (415) 433-6382
Email: jtabacco@bermantabacco.com
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com

Patrick T. Egan
BERMAN TABACCO
One Liberty Square
Boston, MA 02109
Tel.: (617) 542-8300
Fax: (617)542-1194
Email: pegan@bermantabacco.com

Scott Martin
HAUSFELD LLP
33 Whitehall Street
14th Floor
New York, NY 10004
Tel.: (646) 357-1100
Fax: (212) 202-4322
Email: smartin@hausfeld.com

Michael D. Hausfeld
Hilary K. Scherrer
HAUSFELD LLP

1700 K Street, NW
Washington, DC 20006
Tel.: (202) 540-7200
Fax: (202) 540-7201
Email: mhausfeld@hausfeld.com
hscherrer@hausfeld.com

Michael P. Lehmann
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
Tel.: (415) 633-1908
Fax: (415) 358-4980
Email: mlehmann@hausfeld.com

Thomas H. Burt
Betsy S. Manifold
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Email: burt@whafh.com
manifold@whafh.com

Kristen Anderson
Brian M. Hogan
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 519-0523
Fax: (212) 223-6334
Email: kanderson@scott-scott.com
brian.hogan@scott-scott.com

Patrick Coughlin
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
Email: pcoughlin@scott-scott.com

John Radice
Daniel Rubenstein
RADICE LAW FIRM, P.C.
34 Sunset Blvd.
Long Beach, NJ 08008
Tel.: (646) 245-8502

Fax: (609) 385-0745
Email: jradice@radicelawfirm.com
drubenstein@radicelawfirm.com

Eric L. Young
SHEPHERD FINKELMAN
MILLER & SHAH, LLP
35 East State Street
Media, PA 19063
Tel.: (610) 891-9880
Fax: (866) 300-7367
Email: eyoung@sfmslaw.com

Javier Bleichmar
Thayne Stoddard
BLEICHMAR FONTI & AULD LLP
7 Times Square, 27th Floor
New York, NY 10036
Tel.: (212) 789-1340
Fax: (212) 205-3960
Email: jbleichmar@bfalaw.com
tstoddard@bfalaw.com

William J. Ban
Michael A. Toomey
BARRACK, RODOS & BACINE
11 Times Square
640 8th Avenue, 10th Floor
New York, NY 10036
Tel.: (212) 688-0782
Fax: (212) 688-0782
Email: wban@barrack.com
mtoomey@barrack.com

Jeffrey A. Barrack
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, PA 19103
Tel.: (215) 963-0600
Fax: (215) 963-0838
Email: jbarrack@barrack.com

*Additional Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this memorandum complies with the type-volume and type size limitations contained in LR 7.1(b) and (c). The memorandum has 7,722 words in Times New Roman font type in font size 12. The memorandum was prepared using Microsoft Word Office 365 which includes all text, including headings, footnotes, and quotations in the word count.

Dated: October 15, 2026

*/s/ Vincent Briganti*